*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COLEMAN/HAYES/BARFIELD, Minors.

UNPUBLISHED
May 25, 2023

No. 361890
Wayne Circuit Court
Family Division
LC No. 2018-001772-NA

*In re* S. M. BARFIELD, Minor.

No. 361893
Wayne Circuit Court
Family Division
LC No. 2018-001772-NA

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

In Docket No. 361890, respondent-mother appeals as of right the trial court's orders terminating her parental rights to her minor children, JC, AJH, JH, and SMB under MCL 712A.19(b)(3)(a)(*ii*) (parent has deserted the children for 91 or more days), (c)(*i*) (conditions that led to adjudication continue to exist), (i) (parental rights to one or more siblings of the children have been terminated), and (j) (reasonable likelihood the children will be harmed if returned to the parent). In Docket No. 361893, respondent-father appeals as of right the trial court's order terminating his parental rights to SMB under MCL 712A.19(b)(3)(a)(*ii*), (c)(*i*), (i), and (j). We affirm in both cases.

## I. BACKGROUND

This matter began when the Department of Health and Human Services (DHHS) filed a petition in October 2018, with respect to JC, AJH, and JH, whose fathers are not subject to this appeal. In relevant part, the petition alleged: (1) respondent-mother had an extensive history with Child Protective Services (CPS), (2) respondent-mother had a history of substance abuse, (3) AJH was born with illegal substances in her system, and (4) respondent-mother's parental rights to a different child had been previously terminated. It was requested the trial court authorize the

-1-

petition; remove JC, AJH, and JH from respondent-mother's care and custody; exercise jurisdiction; and terminate respondent-mother's parental rights. After a preliminary hearing, the trial court authorized the petition and placed JC, AJH, and JH in foster care.

In January 2019, an adjudication trial was held. After hearing testimony, the trial court exercised jurisdiction and found statutory grounds for termination. However, because the trial court ultimately concluded termination was not in JC's, AJH's, and JH's best interests, the trial court ordered reasonable efforts toward reunification be made. Respondent-mother was ordered to comply with a case service plan, which in relevant part required her to complete services to address her substance abuse.

Respondent-mother demonstrated progress at times. However, in June 2020, she gave birth to SMB, who tested positive for cocaine. In July 2020, DHHS filed a petition requesting termination of respondent-mother's parental rights to SMB at the initial disposition. Respondent-father could not be located by the CPS investigator despite efforts to contact him, and SMB was removed from respondent-mother's care and placed in a foster home. Respondent-mother continued to struggle with substance abuse, and she lost her housing. In November 2020, DHHS filed a supplemental petition, seeking termination of respondent-mother's parental rights to JC, AJH, and JH. The combined adjudication trial and termination hearing was adjourned multiple times. During that time, the trial court ordered reasonable efforts toward reunification continue to be made, and respondent-mother participated in services. However, she continued to struggle with maintaining sobriety, and failed to consistently attend parenting time. Although respondent-father executed an affidavit of parentage with respect to SMB, and was aware of the proceedings, he did not contact caseworkers and request parenting time or request to participate in services.

The combined adjudication trial and termination hearing was held over two days in December 2021 and May 2022. Respondent-father appeared in court for the first time in May 2022. He was appointed counsel and testified that he wanted to participate in services and gain custody of SMB. The trial court exercised jurisdiction over SMB. The trial court found grounds for termination were established under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (i), and (j), and that termination of respondents' parental rights was in their respective children's best interests. In so concluding, the trial court found reasonable efforts toward reunification were made. These appeals followed. This Court consolidated the appeals "to advance the efficient administration of the appellate process." *In re Coleman/Hayes/Barfield Minors; In re Barfield Minor*, unpublished order of the Court of Appeals, entered June 29, 2022 (Docket Nos. 361890 and 361893).

## II. STATUTORY GROUNDS

Respondent-mother argues the trial court clearly erred by finding clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*) and (j). We find no clear error warranting reversal.[1]

---

[1] Respondent-mother fails to acknowledge the trial court also found statutory grounds to terminate her parental rights under MCL 712A.19b(3)(a)(*ii*) and (i). While respondent-mother has

## A. STANDARD OF REVIEW

We review "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 5. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

## B. ANALYSIS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *Id*. We conclude that the trial court did not clearly err by finding termination of respondent-mother's parental rights was proper under MCL 712A.19b(3)(j). Termination is proper under MCL 712A.19b(3)(j) where "[t]here is a reasonable likelihood, based on the conduct or capacity of the child[ren]'s parent, that the child will be harmed if he or she is returned to the home of the parent." The harm contemplated under MCL 712A.19b(3)(j) includes emotional harm, as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Respondent-mother failed to rectify her long-standing issue with substance abuse during the proceedings, which lasted 3½ years. Indeed, during the proceedings, respondent-mother tested positive for cocaine and missed substance screenings, despite being warned that missed screens would be considered positive results. After respondent-mother participated in inpatient treatment and outpatient treatment for extended periods of time, and claimed she was making significant progress, SMB was born with cocaine in her system. Respondent-mother left substance abuse treatment for a period of time after SMB entered care in July 2020. Although respondent-mother testified in May 2022 that she had not used illegal substances since October 2021, she tested positive for cocaine in April 2022. Respondent-mother asserted that it was a "false positive," but did not provide evidence or a rational explanation for this theory. Importantly, except for the April 2022 screening, respondent-mother failed to submit to substance screenings in the months leading up to termination. While respondent-mother argues that she missed screenings because she was not provided with transportation assistance, respondent-mother was given bus passes. She was also given the option of submitting to substance screenings before parenting time with the children.

Although JC, AJH, and JH had been in care for 3½ years and SMB had been in care for 21 months, respondent-mother lacked appropriate housing and transportation at the time of termination. Respondent-mother was also unemployed. Respondent-mother was unable to provide clear testimony as to how she would pay rent in the future, and she did not explain how she would obtain reliable transportation without income. Importantly, reliable transportation was necessary because JC required services to address his behavioral issues. JC and JH also had cognitive issues and needed to attend school. SMB had significant special needs, which required

---

technically abandoned her statutory grounds arguments on appeal, we nonetheless considered them. See *Schaaf v Forbes*, 338 Mich App 1, 21; 979 NW2d 358 (2021); *Roberts & Son Contracting, Inc v North Oakland Dev Corp*, 163 Mich App 109, 113; 413 NW2d 744 (1987).

attending services and medical appointments. Thus, the record supports that the children would be subjected to neglect if returned to respondent-mother's care. They would also suffer emotional harm because they required stability and were attached to their respective foster parents. Indeed, JC demonstrated behavioral issues during the proceedings because of respondent-mother's failure to consistently attend parenting times. AJH and SMB were not bonded to respondent-mother, and AJH would sometimes refuse to engage during parenting times. Because there is a reasonable likelihood the children would experience harm if returned to respondent-mother, termination was proper under MCL 712A.19b(3)(j).[2]

## III. BEST INTERESTS

Respondent-mother next argues that the trial court improperly found termination of her parental rights was in the children's best interests. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

## B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. This Court focuses on the children—not the parent—when reviewing best interests. *In re Atchley*, ___ Mich App at ___; slip op at 7. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

JC, who was 3½ years old when he was removed from respondent-mother's care, was bonded with respondent-mother and called her "mom." However, evidence supports that JC's

---

[2] Because termination was proper under (j), we need not specifically consider the additional grounds on which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

bond with respondent-mother was not healthy. Indeed, an infant mental health therapist began working with respondent-mother and JC in August 2020. One of the main goals was to assist in establishing a "secure attachment" between respondent-mother and JC. After 16 months, there was "still . . . work to do." The infant mental health therapist noted JC, who she opined had experienced "complex trauma," exhibited "strong reactions," defiance, anxiety, and "hypervigilant behaviors" if respondent-mother failed to attend a parenting time. The infant mental health therapist did not have any further recommendations as to how respondent-mother, who continued to miss parenting times in the months leading up to termination, could create a secure attachment with JC. In sum, JC's bond with respondent-mother was not healthy for JC, who desperately needed permanency and stability respondent-mother could not provide. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394 (2014) (holding because there was a "serious dispute on the record concerning whether [the respondent] had a healthy bond of any sort with her children" the decision that termination of her parental rights was in the children's best interests was sufficiently supported).

JH was bonded with respondent-mother and enjoyed spending time with her. However, JH, who was removed from respondent-mother's care when she was one year old, called her foster mother "mama." JH also did not exhibit signs of sadness or distress when leaving parenting time with respondent-mother. Rather, she was eager to return to her foster mother's care. Thus, the record does not support that JH viewed respondent-mother as her parental figure. AJH, who was removed from respondent-mother's care when she was two months old, and SMB, who was removed from respondent-mother's care when she was one month old, were not bonded with respondent-mother.

While the parent-child bond is only one factor for the trial court to consider, *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), as already discussed at length, respondent-mother failed to address her issues with substance abuse during the lengthy proceedings. At the time of termination, respondent-mother was unable to provide stability and permanency for the children. Meanwhile, the children were doing well in their respective placements, where they had the opportunity to maintain stability and obtain permanency. Importantly, the children were bonded with their respective foster parents, who had cared for them for the entirety of their time in care and were willing to adopt them. For these reasons, the trial court did not clearly err by finding termination of respondent-mother's parental rights was in the children's best interests. While termination resulted in JC and JH being separated from AJH and SMB, it was in the children's best interests because the children were doing well in their placements and obtaining the care and stability they required. According to a caseworker, it would be "very, very, hard" for one person to care for all the children because they each required a lot of individual attention. Importantly, testimony supported the children's respective foster parents were committed to fostering the children's relationships in the future.

## IV. DUE-PROCESS ARGUMENTS

Respondent-father argues that his due-process rights were violated in several ways. We conclude respondent-father is not entitled to relief.

## A. PRESERVATION AND STANDARD OF REVIEW

Respondent-father failed to raise the due-process arguments below, thereby rendering them unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved issues for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

## B. ANALYSIS

Respondent-father first argues that he was not appointed counsel until the last day of trial and argues his counsel was therefore unable to adequately prepare. "This Court has explicitly recognized that the United States Constitution guarantees a right to counsel in parental rights termination cases." *In re Williams*, 286 Mich App 253, 275; 779 NW2d 286 (2009). In *In re Cobb*, 130 Mich App 598, 600; 344 NW2d 12 (1983), this Court stated: "[T]he constitutional guarantee of due process confer[s] to an indigent parent the right to appointed counsel at a hearing which may involve termination of parental rights." This pronouncement flows from an understanding that the parent, child, and lawyer-guardian ad litem "share a vital interest in preventing erroneous termination" of the "natural relationship" between a parent and his or her child. *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

Respondent-father cites MCR 3.915 to support his claim that he was entitled to appointed counsel "at all hearings." Under MCR 3.915(B)(1)(a), at a "respondent's first court appearance," a trial court is required to advise a respondent in a child protective proceeding that he or she "has the right to a court appointed attorney at any hearing . . . if the respondent is financially unable to retain an attorney. . . ." A trial court is required to appoint an attorney "to represent the respondent in any hearing" if the respondent requests an attorney, and "it appears to the court . . . the respondent is financially unable to retain an attorney." MCR 3.915(B)(1)(b). The first time respondent-father appeared at any hearing or trial in the child protective proceedings concerning SMB was the May 2022 bench trial. At that time, respondent-father was appointed counsel, who was the same counsel who had been representing the father of AJH and JH throughout the 3½ year-long proceedings. Thus, because respondent-father was appointed counsel at his "first court appearance," and there is no indication that he requested counsel before that date, respondent-father was not denied his due-process right to counsel.

Next, respondent-father argues that he was denied procedural due process. Parents have fundamental due-process rights in termination of parental rights proceedings. *In re Sanders*, 495 Mich 394, 403; 852 NW2d 524 (2014). "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (quotation marks and citations omitted).

-6-

The opportunity to be heard includes the right to notice of that opportunity. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [*Id*. (quotation marks and citation omitted).]

Thus, "a parent is entitled to procedural due process if the state seeks to terminate his parental rights. The state must make reasonable efforts to notify [the parent] of the proceedings and allow him a meaningful opportunity to participate." *Id*. at 122.

Assuming without deciding that respondent-father was not properly served with notice of the bench trial under MCR 3.920, we fail to see how respondent-father can establish plain error affecting his substantial rights. Respondent-father acknowledged that he was aware SMB was born in June 2020, and that CPS was involved. DHHS attempted to serve respondent-father personally and by certified mail with notice of hearings at Collingwood Street in Detroit between July 2020 and May 2021. The home at the Collingwood Street address was owned by one of respondent-father's family members, and respondent-father acknowledged that he lived there when SMB was born. In April 2021, DHHS accomplished service by publication. Respondent-father's mother, who was in communication with respondent-mother, attended hearings and provided respondent-father with information concerning SMB. Respondent-father was also in contact with respondent-mother, and they executed the affidavit of parentage in November 2020. On the affidavit of parentage, respondent-father listed the Collingwood Street address as his address, and he acknowledged he likely received mail there. Respondent-father appeared at the May 10, 2022 hearing despite not being served with notice, thereby showing that he was aware of the proceedings and nonetheless failed to participate before May 2022. Respondent-father did not place objections on the record concerning notice. See MCR 3.920(H) ("The appearance and participation of a party at a hearing is a waiver by that party of defects in service with respect to that hearing unless objections regarding the specific defects are placed on the record.").

Given that respondent-father never attempted to care for SMB, despite being aware SMB was born and CPS was involved, we fail to see how the outcome of the proceedings would have been different. Indeed, termination of respondent-father's parental rights was undoubtedly established under MCL 712A.19b(3)(a)(*ii*) and (j) because of his (1) failure to see or care for SMB, (2) lack of a stable home and employment, and (3) lack of information concerning SMB's extensive needs. See *In re Mayfield*, 198 Mich App 226, 230, 235; 497 NW2d 578 (1993); see also *In re Hudson*, 294 Mich App at 268. The record also overwhelmingly establishes termination was in SMB's best interests because respondent-father did not have a bond with her and because SMB was bonded with her foster parent, who had cared for her throughout the 21 months she spent in care. See *In re White*, 303 Mich App at 713-714 (outlining the relevant considerations when deciding best interests). Respondent-father is not entitled to relief.

Next, respondent-father argues that he was deprived of the ability to meaningfully participate in the proceedings because the trial court terminated his parental rights before permitting him to engage in services. We conclude that respondent-father cannot establish plain error affecting his substantial rights. Indeed, despite having notice SMB was born in June 2020, and CPS was involved, respondent-father failed to come forward and attempt to provide care to

SMB during the proceedings, which lasted 21 months. Respondent-mother was provided with services after SMB entered care in July 2020, and the trial court ordered in February 2021 that reasonable efforts toward reunification be made. Respondent-father was not provided with services because of his complete lack of involvement for a vast majority of the proceedings despite having knowledge of them. Moreover, given the facts of this case, we fail to see how any plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App at 311.

Affirmed in both cases.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford